IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

FILED
US DISTRICT COURT
DISTRICT OF NEBRASKA
JUL 2 3 2025
OFFICE OF THE CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>TYSON BAUER,<br><br>  Defendant. | 4:25CR3062<br><br>INDICTMENT<br>18 U.S.C. § 1014 |

The Grand Jury charges that:

## INTRODUCTION

At all times material to this Indictment,

### I. Federal Crop Insurance Program

1. The United States Department of Agriculture ("USDA") is a department of the United States established to support agricultural production. In 1938, Congress passed the Federal Crop Insurance Act ("the Act") in order to promote economic stability of agriculture in part, through a system of crop insurance. In furtherance of this purpose, Congress established the Federal Crop Insurance Corporation ("FCIC"), which was authorized to insure crop losses due to certain natural disasters, as determined by the Secretary of the USDA.

2. The Act authorized the extension of insurance coverage to producers, that is, a person or entity with an insurable interest in a crop as an owner-operator, landlord, tenant, or sharecropper. Farmers are producers. A crop insurance policy under the Act provided payments to the farmer when specified natural disasters caused the harvest for the farm to be less than the amount specified in the insurance contract or policy agreement.

1

3. Congress authorized the FCIC to use private insurance companies to provide crop insurance to the nation's farmers. Congress created the Risk Management Agency (RMA), which is an agency of the USDA, to contract with private insurance companies to reimburse the insured farm losses, on behalf of the FCIC.

4. The FCIC reinsures the insurance policies that are sold by the private insurance companies to eligible farmers. FCIC also subsidizes the insured farmer's premiums and reimburses the insurance companies for the insurance payments made to the insured farmer, provided the private insurance company and the insured farmer have complied with all FCIC approved policies and procedures.

## II.   Application for Insurance Policy and Determination of Loss

5. In order to obtain crop insurance coverage, an eligible farmer must complete and sign an insurance application and submit it to their private insurance company by the sales closing date.

6. Annually, the insured farmer must submit an Acreage Report to the insurance company reporting all acreage planted to the insured crop in the county in which they have a share. The insured farmer must declare the location, date of planting, number of acres planted, and their share of the insured crop in the county. The insured farmer must sign the Acreage Report certifying that all the information is accurate and submit it to the insurance provider through his or her crop insurance agent.

7. When a properly insured crop is damaged by an event covered by the policy, the insured farmer reports the crop loss to his insurance agent and a Notice of Loss is sent to the insurance provider. Upon receipt of the Notice of Loss, the insurance provider assigns a loss adjuster to inspect the crop acreage, verifies the cause of loss, and obtains production records

from the insured farmer to complete the claim forms and determine the amount of loss. The basic provisions section of an insurance policy states that in order to receive an indemnity payment, the insured must provide complete harvesting, production, and marketing records of each insured crop.

8. Based on the information provided by the insured, the adjuster completes a Production Worksheet. The insured farmer must sign the Production Worksheet certifying that all the information is true and complete including, but not limited to, their interest or share percentage in the insured crop; the cause of loss (damage); the amount of harvested and appraised production.

9. After the Production Worksheet is completed and signed by the loss adjuster and the insured farmer, the claim is sent to the insurance provider to calculate the amount of loss and indemnity payment. Subsequently, the insurance provider pays an indemnity to the insured farmer for the loss on the insured crop. After ensuring all criteria are met, FCIC reimburses the insurance company for the crop insurance indemnity paid to the insured farmer.

10. Prior to the closing date for the insurance application for the following crop year, the insured must certify their previous crop year production by completing and certifying a production report. By signing the Production Report, the insured is certifying that all the information is true and accurate.

### III. The Reinsurance Company

11. Company 1 is an authorized insurance provider who is reinsured by the FCIC.

12. In 2020, defendant TYSON BAUER, applied for and received insurance policies for his crops through Company 1.

3

13. On March 3, 2020, BAUER applied for insurance coverage representing he had a 100 percent share in his corn, grain sorghum, and soybean crops planted in Clay County, Nebraska (Policy Number 2020-2003736-NE), Nuckolls County, Nebraska (Policy Number 2020-2003737-NE), and Thayer County, Nebraska (Policy Number 2020-2003738-NE).

14. In October 2020, BAUER submitted a Notice of Loss for his corn in Nuckolls and Thayer Counties, Nebraska alleging wind damage to his crops and requesting indemnity payment on this loss.

15. In November 2020, BAUER submitted a Notice of Loss for his corn in Clay County, Nebraska alleging wind damage to his crops and requesting indemnity payment on this loss.

16. In support of the Notice of Loss for the Thayer, Clay, and Nuckolls Counties, Nebraska corn crops, on December 14, 2020, BAUER signed certified production worksheets indicating that he had produced 118,019.95 bushels of corn in Clay, Thayer, and Nuckolls Counties for the 2020 year.

17. BAUER received an indemnity check for the soybean claim of $97,812.00. This check was deposited by Company 2, who held the assignment of indemnity on the policy.

18. It was later discovered that in October and November 2020, BAUER sold 40,626.08 bushels of corn to Company 3 under the name of his step-daughter, Individual 1, and received a check in the amount of $151,986.34. The check was deposited into the joint account of Individual 1 and Individual 2, and then immediately transferred to the account of TJB FARMS.

## COUNT I

The Grand Jury realleges and incorporates by reference Paragraphs 1 through 18 of this Indictment as if fully set forth herein. On or about December 14, 2020, in the District of Nebraska, the defendant TYSON BAUER, knowingly made false statements and reports for the purpose of influencing the action of the Federal Crop Insurance Corporation and a company that it reinsures, in connection with the payment of crop insurance benefits; to wit, TYSON BAUER falsely reported within his certified production report that his total Clay, Thayer, and Nuckolls County, Nebraska corn crop production for the year 2020 was lower than the amount that he in fact produced, harvested, and sold. In fact, BAUER knew his actual production was materially higher than represented in the certified reports.

All in violation of Title 18, United States Code, Section 1014.

A TRUE BILL.

FOREPERSON

The United States of America requests that trial of this case be held in Lincoln, Nebraska, pursuant to the rules of this Court.

_____
DANIEL PACKARD, #21991
Assistant U.S. Attorney

5